UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:10-cr-00007-JMS-CMM |
| | ) | |
| HERBERT D. PHIPPS, | ) -14 | |
| | ) | |
| Defendant. | ) | |

**Entry Granting Motion for Compassionate Release**

Defendant Herbert D. Phipps has filed a motion requesting compassionate release under § 603 of the First Step Act, which is codified at 18 U.S.C. § 3582(c)(1)(A)(i). Dkt. 1773. Mr. Phipps asks the Court to reduce his sentence to time served and to immediately release him. Dkt. 1814. The United States responded on October 28, 2021, dkt. 1816, and Mr. Phipps filed a reply, dkt. 1817. Thus, the motion for compassionate release is ripe for the Court's consideration. For the reasons explained in this Entry, the motion is **granted**.

**I. Background**

*A.    Conviction and Sentencing*

In 2011, the Court sentenced Mr. Phipps to life imprisonment after a jury found him guilty of conspiracy to distribute 500 grams of methamphetamine (mixture) and 100 kilograms of marijuana. Dkt. 1048. The Court also imposed 10 years of supervised release. *Id.* During the proceedings, the United States filed an Information under 21 U.S.C. § 851 and alleged that Mr. Phipps previously had been convicted of two drug felonies. Dkt. 778. As a result, under the law as it existed at the time, the mandatory minimum sentence was life imprisonment. *See* 21 U.S.C. § 841(b)(1)(A)(viii) (effective Aug. 3, 2010 to Dec. 20, 2018). Absent the mandatory minimum

sentence, Mr. Phipps's guidelines sentence range was 262–327 months' imprisonment. Dkt. 967 at 19.

The Presentence Investigation Report sets out the following offense conduct:

From July 2009 to April 15, 20210, Wesley Hammond operated a methamphetamine trafficking organization in Terre Haute, Indiana, while he was incarcerated by the Indiana Department of Correction. *Id.* at 6. One of Mr. Hammond's associates provided Mr. Phipps two-ounce quantities of methamphetamine on five or six occasions between October 2009 and April 2010. *Id.* Sometimes the associate fronted the methamphetamine to Mr. Phipps, and sometimes Mr. Phipps paid cash. *Id.* Wire surveillance revealed that Mr. Hammond's associate fronted two ounces of methamphetamine to Mr. Phipps on March 8, 2010. *Id.* Mr. Phipps paid for the fronted drugs during the following days. *Id.* Mr. Phipps had reasonable and foreseeable knowledge that approximately 11.4 kilograms of methamphetamine mixture was distributed as part of the conspiracy. *Id.*

B.   *Current Incarceration and Medical Conditions*

Mr. Phipps is now 65 years old. He is currently incarcerated at USP Hazelton. He has been in custody since his arrest in April 2010—that is, he has been in custody for about eleven-and-a-half years.

As of May 17, 2021, the Bureau of Prisons ("BOP") considers Mr. Phipps to present a low risk of recidivism. Dkt. 1814-4 at 1. For reasons undisclosed by the record, the BOP has also assigned Mr. Phipps a high security classification. *Id.* He has used his decade-plus in the BOP well. His counsel represents (and the United States does not dispute) that he has received only three relatively minor write-ups. *See* dkt. 1814-6. He completed the non-residential drug treatment program in 2012. Dkt. 1814-4 at 1.

Upon his release, Mr. Phipps plans to live with his daughter in Terre Haute, Indiana. Dkt. 1814 at 18; *see also* dkt. 1814-5. Counsel represents that, in an interview, Mr. Phipps's daughter stated that she has a medical degree and plans to care for her father if released. Dkt. 1814 at 16–17.

Mr. Phipps's medical records show that he suffers from several medical conditions, including uncontrolled type-2 diabetes with ophthalmic manifestations and polyneuropathy, schizophrenia, hypertension, hyperlipidemia, age-related cataracts, and macular degeneration. Dkt. 1814-2 at 83–84.

Mr. Phipps was diagnosed with prostate cancer in 2014 and received radiation treatments. Dkt. 1816-1 at 1–4. The cancer is in remission, but Mr. Phipps is still monitored for a possible recurrence. *Id.*; dkt. 1814-2 at 84–85. In July 2020, Mr. Phipps declined an opportunity for a follow-up appointment with a urologist to monitor this condition. Dkt. 1816-1 at 1.

Since at least October 2020, Mr. Phipps has complained to BOP medical staff that he experiences blurry vision. On October 21, 2020, Mr. Phipps had an optometry exam. Dkt. 1814-2 at 1. He reported that he had very burry vision and that his glasses no longer helped. *Id.* The optometrist noted that refraction made no improvement in Mr. Phipps's vision. Dkt. 1817-1 at 243. He concluded that Mr. Phipps had background diabetic retinopathy, which had resolved, and age-related cataracts. *Id.* at 244. Mr. Phipps does not appear to have had any follow-up care for his eyes until March 2021, when he saw a BOP optometrist. Dkt. 1814-2 at 19–20. The optometrist diagnosed him with age-related cataracts and type-2 diabetes with ophthalmic manifestations. *Id.* at 20. The optometrist also noted that Mr. Phipps had "quickly progressing cataracts" and requested a consultation with an ophthalmologist. *Id.* In April 2021, Mr. Phipps saw an outside ophthalmologist. *Id.* at 121–26. The ophthalmologist diagnosed him with blurred vision, bilateral

posterior capsular opacification, and mild nonproliferative diabetic retinopathy with macular edema ("Mild NPDR"). *Id.* at 123. The ophthalmologist recommended monitoring the Mild NPDR and referred Mr. Phipps to another physician for a cataract evaluation. *Id.* As of the writing of this Entry, it does not appear that Mr. Phipps has received a cataract evaluation.

Over the last two years, Mr. Phipps has also struggled to control his blood sugar and his type-2 diabetes. *See generally* dkt. 1814-2; dkt. 1817-1. Some record evidence suggests that Mr. Phipps's own behavior has contributed to the problems. *See, e.g.*, dkt. 1816-1 at 5 (noting that Mr. Phipps admitted to eating a lot of sweets), 8 (noting that Mr. Phipps was eating a snack after taking his insulin), 10 (noting that Mr. Phipps was not taking the prescribed units of insulin in the evening). That said, the record also includes records showing that Mr. Phipps experienced problems controlling his blood sugar at other times. *See, e.g.*, dkt. 1814-2 at 6 (noting that Mr. Phipps complained of dropping blood glucose), 23 (same). Mr. Phipps also suffers from schizophrenia, which might affect his ability to comply with his doctors' treatment recommendations. Dkt. 1817 at 3–4.

## II. Legal Standard

The general rule is that sentences imposed in federal criminal cases are final and may not be modified. 18 U.S.C. § 3582(c). Under one exception to this rule, a court may reduce a sentence upon finding there are "extraordinary and compelling reasons" that warrant a reduction. 18 U.S.C. § 3582(c)(1)(A)(i). Before the First Step Act was enacted on December 21, 2018, only the Director of the BOP could file a motion for a reduction based on "extraordinary and compelling reasons." Now, a defendant is also permitted to file such a motion after exhausting administrative remedies. *See* First Step Act of 2018, Pub. L.N. 115-391, 132 Stat. 5194, 5239 (2018). The amended version of the statute states:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
>> (i) extraordinary and compelling reasons warrant such a reduction; or
>>
>> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A).

Congress directed the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). It directed that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." *Id.* Before passage of the First Step Act, the Sentencing Commission promulgated a policy statement regarding compassionate release under § 3582(c). U.S.S.G. § 1B1.13.

Section 1B1.13 sets forth the following considerations. First, whether "[e]xtraordinary and compelling reasons warrant the reduction" and whether the reduction is otherwise "consistent with this policy statement." U.S.S.G. § 1B1.13(1)(A), (3). Second, whether the defendant is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C.

5

§ 3142(g)." U.S.S.G. § 1B1.13(2). Finally, consideration of the sentencing factors in 18 U.S.C. § 3553(a), "to the extent they are applicable." U.S.S.G. § 1B1.13.

As to the first consideration, Subsections (A)-(C) of Application Note 1 to § 1B1.13 identify three specific "reasons" that qualify as "extraordinary and compelling": (A) terminal illness diagnoses or serious conditions from which a defendant is unlikely to recover and which "substantially diminish[]" the defendant's capacity for self-care in prison; (B) a serious deterioration in physical or mental health because of the aging process where a defendant is over 65 years old and has served at least ten years or 75% of his sentence, whichever is less; or (C) certain family circumstances (the death or incapacitation of the caregiver of the defendant's minor child or the incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner). U.S.S.G. § 1B1.13, Application Note 1(A)–(C). Subsection (D) adds a catchall provision for "extraordinary and compelling reason[s] other than, or in combination with, the reasons described in subdivisions (A) through (C)," "[a]s determined by the Director of the Bureau of Prisons." *Id.*, Application Note 1(D).

The policy statement in § 1B1.13 addresses only motions from the Director of the BOP. *Id.* ("Upon the motion of Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment . . . "). It has not been updated since the First Step Act amended § 3582(c)(1)(A) to address motions that are filed by prisoners. As a result, the Sentencing Commission has not yet issued a policy statement "applicable" to motions filed by prisoners. *United States v. Gunn*, 980 F. 3d 1178, 1180–81 (7th Cir. 2020). And, in the absence of an applicable policy statement, the portion of § 3582(c)(1)(A) requiring that a reduction be "consistent with the applicable policy statements issued by the Sentencing Commission" does not

6

curtail a district court judge's discretion. *Id.* at 1180. Nonetheless, the Commission's analysis in § 1B1.13 can guide a court's discretion without being conclusive. *Id.* As to motions brought under the "catchall" provision in Subsection (D), district judges should give the Director of the BOP's analysis substantial weight (if he has provided such an analysis), even though those views are not controlling. *Id.*

Accordingly, the Court evaluates motions brought under the "extraordinary and compelling" reasons prong of § 3582(c)(1)(A) with due regard for the guidance provided in § 1B1.13 by deciding: (1) whether a defendant has presented an extraordinary and compelling reason warranting a sentence reduction; (2) whether the defendant presents a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and (3) whether the applicable sentencing factors in § 3553(a) favor granting the motion. As directed by the U.S. Court of Appeals for the Seventh Circuit in *Gunn*, in exercising its discretion to determine whether "extraordinary and compelling reasons" warrant a sentence reduction within the meaning of § 3582(c)(1)(A)(i), the Court acknowledges that "[t]he substantive aspects of the Sentencing Commission's analysis in § 1B1.13 and its Application Notes provide a working definition of 'extraordinary and compelling reasons'" and consults § 1B1.13 to guide its discretion but recognizes that § 1B1.13 is not conclusive. *See id.* at 1180 ("the Commission's analysis can guide discretion without being conclusive").

### III. Discussion

Mr. Phipps contends that "extraordinary and compelling reasons" support a sentence reduction in his case within the meaning of § 3582(c)(1)(A)(i) because: (1) his medical conditions substantially reduce his ability to provide self-care while incarcerated at USP Hazelton; and (2) he is 65 years old, has served more than 10 years of his sentence, and suffers from a serious

deterioration in physical health because of the aging process. Dkt. 1814 at 7–11.[1] He further argues that a reduction of his sentence would not create a danger to the community or be inconsistent with the sentencing factors in 18 U.S.C. § 3553. *Id.* at 15–19.

In response, the United States does not dispute that Mr. Phipps has exhausted his administrative remedies as required by § 3582(c)(1)(A). *See generally* dkt. 1816. It also does not argue that Mr. Phipps would be a danger to the community if released or that the sentencing factors in § 3553(a) weigh against release. *Id.* Instead, it argues only that Mr. Phipps has not presented an extraordinary and compelling reason warranting release because he has not shown that he has a serious medical condition that substantially diminishes his ability to provide self-care in prison. *Id.* at 8–12.

A. *Extraordinary and Compelling Reasons*

The Court concludes that Mr. Phipps has shown extraordinary and compelling reasons warranting release in this case.[2] Mr. Phipps is 65 years old. He has served more than 10 years of his sentence. Moreover, he is suffering from rapidly advancing age-related cataracts that have caused him to experience blurry vision and have not yet been thoroughly evaluated or treated. Mr. Phipps's diabetes has also progressed during his decade-plus in prison, and he now suffers from

---

[1] In her opening brief, Mr. Phipps's counsel also argued that Mr. Phipps could show extraordinary and compelling reasons warranting relief because he would face a shorter mandatory minimum sentence if sentenced today. Dkt. 1814 at 1–3. In response, the United States asserted that this argument is foreclosed by the Seventh Circuit's opinion in *United States v. Thacker*, 4 F.4th 569 (7th Cir. 2021). Dkt. 1816 at 7–8. Mr. Phipps's counsel did not address this argument in her reply other than to note that there is a circuit split on this issue and that several defendants have asked the Supreme Court to resolve the split. Dkt. 1817 at 1 n.1. The Court need not reach this issue, however, because it finds extraordinary and compelling reasons warranting relief without considering the change to the mandatory minimum sentence.

[2] In keeping with the Seventh Circuit's instruction in *United States v. Gunn*, 980 F.3d 1178, 1180–81 (7th Cir. 2020), the Court has considered the rationale provided by Mr. Phipps's warden in denying Mr. Phipps's administrative request for relief. Dkt. 1814-3. In this case, the warden decided only that Mr. Phipps did not suffer from a debilitating medical condition. *Id.* He did not appear to consider whether Mr. Phipps could show that he was 65 years or older, had served more than 10 years of his sentence, and was suffering from a serious deterioration in physical or mental health because of the aging process. *Id.* Thus, the warden's decision offers little guidance to the Court.

polyneuropathy. *See* dkt. 1817 at 2–3 (summarizing medical records). As explained above, Mr. Phipps has not been able to control his diabetes over the last two years. In addition, he suffers from schizophrenia, which may affect his ability to comply with his doctors' treatment recommendations. Finally, Mr. Phipps suffers from a number of other conditions commonly associated with aging, such as hypertension and macular degeneration. Taken together, the Court concludes that these facts establish extraordinary and compelling reasons warranting relief under § 3582(c)(1)(A)(i). *See* U.S.S.G. § 1B1.13, Application Note 1(B).[3]

B.   *Danger to any Other Person or the Community*

The United States does not argue that Mr. Phipps would be a danger to any other person or the community if released, and the Court agrees. The Sentencing Guidelines provide that compassionate release is appropriate only where the "defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Section 3142(g) sets out the factors the Court must consider in determining whether a defendant should be detained pending trial. These same factors guide the Court's release determination at this juncture as well:

> **(g) Factors to be considered.**—The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning--
> **(1)** the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal

---

[3] The United States did not respond to Mr. Phipps's argument that he had shown extraordinary and compelling reasons warranting relief under U.S.S.G. § 1B1.13, Application Note 1(B), thereby waiving any argument to the contrary. *See generally* dkt. 1816. To the extent that Mr. Phipps does not meet the strict requirements of any of this provision, the Court notes that it is not bound by the policy statement and possesses broad discretion to determine what qualifies as "extraordinary and compelling" under § 3582(c)(1)(A)(i). *See Gunn*, 980 F.3d at 1180–81. Even if Mr. Phipps did not meet the strict requirements of Application Note 1(B), the Court would exercise its broad discretion to find that extraordinary and compelling reasons warrant relief in this case.

>  crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
> **(2)** the weight of the evidence against the person;
> **(3)** the history and characteristics of the person, including--
>> **(A)** the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>> **(B)** whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
> **(4)** the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

Mr. Phipps's crimes were serious. While on probation, he distributed large amounts of methamphetamine as part of a large-scale drug trafficking organization. Dkt. 967 at 6, 8–13. He also was convicted of multiple felonies prior to his conviction in this case. *Id.* at 8–13. And, the BOP, for reasons not reflected by the record, apparently considers him to be a high security risk.

The Court finds, however, that Mr. Phipps's release from incarceration to his 10-year term of supervised release would not threaten the safety of any person or the general public. At this point, Mr. Phipps is 65 years old and suffers from multiple serious medical conditions, including cataracts and polyneuropathy. He has served more than a decade in prison for his offense in this case, and his other felony convictions are now about 20 years (or more) in the past. In his more than 10 years of incarceration, Mr. Phipps has accrued only three, relatively minor disciplinary write-ups. He has completed the non-residential drug treatment program and has received treatment for his mental health issues. Tellingly, even the BOP rates him as presenting a low risk of recidivism. Upon release, Mr. Phipps plans to live with his daughter, who will provide him with housing. He represents that he will be eligible for Social Security benefits upon release, *see* dkt.

1814-5 (reentry plan), which should provide him with some measure of income. The support of his family and the potential for some financial stability should help Mr. Phipps transition back to being a law-abiding member of the community.

Accordingly, pursuant to § 3142(g), the Court finds that Mr. Phipps does not presently pose a danger to any person or the community if his sentence is reduced to time served.

C.    *Section 3553(a) Factors*

The United States also does not argue that the sentencing factors in § 3553(a) weigh against release, *see generally* dkt. 1816, and the Court agrees. Section 3553(a) provides:

> **(a) Factors to be considered in imposing a sentence.**—The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—
>> **(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;
>> **(2)** the need for the sentence imposed—
>>> **(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>> **(B)** to afford adequate deterrence to criminal conduct;
>>> **(C)** to protect the public from further crimes of the defendant; and
>>> **(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>> **(3)** the kinds of sentences available;
>> **(4)** the kinds of sentence[s] and the sentencing range established for--
>>> **(A)** the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines [issued by the Sentencing Commission . . . ;]
>> **(5)** any pertinent policy statement guidelines [issued by the Sentencing Commission . . . ;]
>> **(6)** the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>> **(7)** the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

As recognized above, Mr. Phipps's conduct in this case was serious. But Mr. Phipps has been incarcerated for more than 11 years, representing a serious sanction that appropriately

recognizes the seriousness of his conduct. He has maintained a relatively clean conduct record in the BOP and has taken steps to rehabilitate himself, suggesting that further incarceration is not needed to protect the public from future crimes he might commit. He is 65 years old and suffers from a number of serious medical conditions that the BOP has not, thus far, been able to adequately treat. He also endured radiation treatment for prostate cancer in 2014 and 2015, making his decade-plus of incarceration more grueling than that of the average offender.

Finally, if Mr. Phipps were sentenced today, he would not face a mandatory life sentence. *See* dkt. 1816 at 7; 21 U.S.C. § 841(b)(1)(A)(viii) (eff. Dec. 21, 2018) (providing 10-year mandatory minimum sentence where defendant has not previously been convicted of a serious drug felony, 15-year mandatory minimum sentence where defendant has previously been convicted of one serious drug felony, and 25-year mandatory minimum sentence where defendant has previously been convicted of two serious drug felonies); *see also United States v. Hudson*, 967 F.3d 605, 609 (7th Cir. 2020) (holding, in the context of a motion for sentence reduction under § 404 of the First Step act, that, when considering the § 3553(a) factors in connection with a motion for sentence reduction under the First Step Act, a court can consider "new statutory minimum or maximum penalties; current Guidelines; post-sentencing conduct; and other relevant information about a defendant's history and conduct."). Indeed, the United States concedes that, if he were sentenced today, Mr. Phipps would face only a mandatory minimum sentence of 10 years. Dkt. 1816 at 7.[4] Assuming 15% good-credit time, that equates to a mandatory minimum sentence of eight-and-a-half actual years served. Mr. Phipps has already served about eleven-and-a-half actual years, more than three years beyond the statutory minimum he would face if sentenced today.

---

[4] The Court notes that Mr. Phipps argued that he would face a mandatory minimum sentence of 15 years if sentenced today Dkt. 1814 at 2–3. The Court need not resolve the disagreement because it would find that the § 3553(a) factors weigh in favor of release even if Mr. Phipps would face a 15-year mandatory minimum sentence if sentenced today.

While the reduced mandatory minimum is an inappropriate basis to modify Mr. Phipps's sentence, the Court considers it only to conclude that further incarceration would be greater than necessary to serve the purposes of punishment set forth in § 3553(a)(2). *See United States v. Thacker*, 4 F.4th 569, 575 (7th Cir. 2021) (concluding that courts may not consider non-retroactive change to mandatory sentence required by 18 U.S.C. § 924(c) when determining whether "extraordinary and compelling reasons" warrant a sentence reduction under § 3582(c)(1)(A)(i), but that nothing prohibits courts from considering the change when determining the length of an otherwise warranted reduction).

Taking all the facts together, the Court finds that the § 3553(a) factors weigh in favor of reducing Mr. Phipps's sentence to time served. *See United States v. Ebbers*, No. S402-CR-11443 VEC, 2020 WL 91399, at *7 (S.D.N.Y. Jan. 8, 2020) (in evaluating motion for compassionate release, the court should consider whether the § 3553(a) factors outweigh the "extraordinary and compelling reasons" warranting compassionate release, and whether compassionate release would undermine the goals of the original sentence). Under the facts presented by this case, keeping Mr. Phipps incarcerated any longer would be more than what is necessary to provide just punishment for Mr. Phipps's offenses.

### IV. Conclusion

Pursuant to 18 U.S.C. § 3582(c), the Court finds that extraordinary and compelling reasons warrant a reduction of Mr. Phipps's sentence to time served, that Mr. Phipps does not pose a danger to any other person or the community under the conditions of release, that the § 3553(a) factors support a reduction, and that his release from imprisonment is consistent with the Sentencing Commission's applicable policy statements. Therefore, the Court **GRANTS** Mr. Phipps's motion for compassionate release, dkt. [1773], and **ORDERS** that Mr. Phipps's sentence of imprisonment

be reduced to **time served.** The term of supervised release remains 10 years. The terms of supervised release stated in the Judgement imposed on July 7, 2011, dkt. 1048, remain the same with the addition of the following conditions: Mr. Phipps is ordered to comply with any period of quarantine due to the COVID-19 pandemic as directed by medical staff and/or any state or local health authority.

    This Order is stayed for up to **21 days**, for the verification of Mr. Phipps's residence and/or establishment of a release plan, to make appropriate travel arrangements, and to ensure Mr. Phipps's safe release. The BOP shall release Mr. Phipps as soon as a residence is verified, a release plan is established, appropriate travel arrangements are made, and it is safe for Mr. Phipps to travel. There shall be no delay in ensuring travel arrangements are made. If more than 21 days are needed to make appropriate travel arrangements and ensure Mr. Phipps's safe release, the parties shall immediately notify the Court and show cause why the stay should be extended.

    No later than **12:00 p.m. on November 12, 2021**, counsel for the United States is **ordered** to do the following: (1) transmit the contemporaneously filed AO248 Order to Mr. Phipps's custodian; and (2) file a notice with the Court confirming that transmission of the AO248 Order has occurred.

    **IT IS SO ORDERED.**

Date: 11/9/2021

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

All Electronically Registered Counsel